Justice Breyer,
with whom Justice Souter joins,
concurring.
Twenty years ago Justice Thürgood Marshall warned that the test of Batson v. Kentucky, 476 U. S. 79 (1986), would fail to ferret out unconstitutional discrimination in the selection of jurors. Id., at 102-103 (concurring opinion) (“The. decision today will not end the racial discrimination that peremp-tories inject into the jury-selection process”). In my view, *343 history has proved Justice Marshall right. See Miller-El v. Dretke, 545 U. S. 231, 266-267 (2005) (Breyer, J., concurring). And today’s case, like Miller-El, helps to illustrate Batson’s fundamental failings.
For one thing, the prosecutor’s inability in this case to provide a clear explanation of why she exercised her peremptory challenges may well reflect the more general fact that the exercise of a peremptory challenge can rest upon instinct not reason. Insofar as Batson asks prosecutors to explain the unexplainable, how can it succeed? Miller-El, 545 U. S., at 267-268 (Breyer, J., concurring).
For another thing, the trial judge’s uncertainty about the legal validity of the exercise of peremptory challenges in this case may reflect the more general fact that, sometimes, no one, not even the lawyer herself, can be certain whether a decision to exercise a peremptory challenge rests upon an impermissible racial, religious, gender-based, or ethnic stereotype. Ibid. See also Batson, supra, at 106 (Marshall, J., concurring) (noting unconscious internalization of racial stereotypes). How can trial judges second-guess an instinctive judgment the underlying basis for which may be a form of stereotyping invisible even to the prosecutor? Miller-El, supra, at 267-268 (Breyer, J., concurring).
Finally, the case before us makes clear that ordinary mechanisms of judicial review cannot ensure Batson’s effectiveness. The reasons are structural. The trial judge is best placed to consider the factors that underlie credibility: demeanor, context, and atmosphere. And the trial judge is best placed to determine whether, in a borderline case, a prosecutor’s hesitation or contradiction reflect (a) deception, or (b) the difficulty of providing a rational reason for an instinctive decision. Appellate judges cannot on the basis of a cold record easily second-guess a trial judge’s decision about likely motivation. These circumstances mean that appellate courts will, and must, grant the trial courts considerable leeway in applying Batson. See Hernandez v. New *344 York, 500 U. S. 352 (1991). As the present case illustrates, considerations of federalism require federal habeas courts to show yet further deference to state-court judgments. See 28 U. S. C. § 2254(d)(2) (state-court factual determination must stand unless “unreasonable”).
The upshot is an unresolvable tension between, on the one hand, what Blackstone called an inherently “‘arbitrary and capricious’” peremptory challenge system, Miller-El, supra, at 272 (Breyer, J., concurring) (quoting 4 W. Blackstone, Commentaries on the Laws of England 346 (1769)), and, on the other hand, the Constitution’s nondiscrimination command. Given this constitutional tension, we may have to choose. Miller-El, supra, at 273 (Breyer, J., concurring); Swain v. Alabama, 380 U. S. 202, 244 (1965) (Goldberg, J., dissenting) (“Were it necessary to make an absolute choice between the right of a defendant to have a jury chosen in conformity with the requirements of the Fourteenth Amendment and the right to challenge peremptorily, the Constitution compels a choice of the former”); Batson, supra, at 107 (Marshall, J., concurring) (same).
I have argued that legal life without peremptories is no longer unthinkable. Miller-El, supra, at 272 (concurring opinion) (citing, inter alia, the experience of England). I continue to believe that we should reconsider Batson's test and the peremptory challenge system as a whole. Nonetheless, because the Court correctly applies the present legal framework, I concur in its opinion.